# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

**DOCKET NO. 3:06-CR-13-W**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| DAVID CANO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant's motion to suppress. After two evidentiary hearings, the Court orally decided all Fourth Amendment issues regarding consent to search and all Fifth Amendment issues regarding spontaneous, non-interrogated statements by the defendant.

The Court, however, reserved ruling on the question of whether certain statements of the defendant made in response to questioning by a Charlotte-Mecklenburg Police Officer constituted statements made in "custody" in the context of Miranda v. Arizona[1] because the defendant was under house arrest subject to electronic monitoring. This primary issue may be viewed as two sub-issues: (1) whether house arrest with electronic monitoring is *per se* "custody" in the context of Miranda; and (2) whether a defendant, suspecting that interrogating officers know he is under house arrest with electronic monitoring, reasonably believes he is in *de facto* "custody" in the context of Miranda. Upon review of the supplemental briefs and the applicable law, the Court finds that the answer to both questions is no and therefore DENIES the suppression motion in its entirety.

---

[1] 384 U.S. 436 (1966).

LEGAL BACKGROUND

In order to curtail coerced confessions obtained in violation of the Fifth Amendment, the police must give Miranda warnings prior to any "custodial interrogation." A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. By contrast, "[g]eneral on-the-scene questioning as to facts surrounding a crime" does not trigger Miranda. Id. at 477. This distinction was motivated, in part, by the Supreme Court's observation that "the modern practice of in-custody interrogation is psychologically . . . oriented," with the police seeking out a psychological advantage by isolating a suspect in hostile and unfamiliar environs rather than conducting interrogations "within the walls of [the suspect's own] home," where "[h]e is more keenly aware of his rights and more reluctant to tell of his indiscretions." Id. at 448-50.

The test for determining whether a suspect is in custody is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). This is an objective test: "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 442. The Court has held that questioning at a police station may be permissible without Miranda warnings where the suspect is not placed under arrest and his freedom to cease questioning and depart the interrogation room is not restricted in any way. Oregon v. Mathiason, 429 U.S. 492 (1977). By contrast, the Court found a violation of Miranda where a suspect was questioned inside his own home under circumstances demonstrating that he had been formally placed under arrest and was not at liberty to leave. Orozco v. Texas, 394 U.S. 324 (1969). In other words, short of an actual arrest, there is no sole dispositive criterion for determining whether a suspect is

2

in custody, with courts balancing such myriad considerations as "the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and pressure exerted to detain him." United States v. Curtis, 568 F.2d 643, 646 (9th Cir. 1978).

The defendant's particular situation falls somewhere in the middle of this multidimensional spectrum and is analogous to those cases involving the interrogation of an already incarcerated prisoner. United States v. Conley is the seminal case in this Circuit. 779 F2d 970 (4th Cir. 1985). In Conley the Fourth Circuit rejected the notion that an incarcerated prisoner is "automatically always in 'custody' within the meaning of Miranda." Id. at 973. While technically an incarcerated person is necessarily in the "custody" of the state and not free to leave his restrictive environment, the Fourth Circuit concluded that Miranda is not implicated unless the prisoner is subjected to "more than the usual restraint on [his] liberty to depart." Id. The Fourth Circuit explained:

> Prisoner interrogation simply does not lend itself easily to analysis under the traditional formulations of the Miranda rule. A rational inmate will always accurately perceive that his ultimate freedom of movement is absolutely restrained and that he is never at liberty to leave an interview conducted by prison or other government officials. Evaluation of prisoner interrogations in traditional freedom-to-depart terms would be tantamount to a *per se* finding of "custody," a result we refuse to read into [the Supreme Court's jurisprudence on Miranda].
>
> A different approach to the custody determination is warranted in the paradigmatic custodial prison setting where, by definition, the entire population is under restraint of free movement. The Ninth Circuit has taken the position that "restriction" is a relative concept and that, in this context, it 'necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." [citation omitted] Thus, the court looked to the circumstances of the interrogation to determine whether the inmate was subjected to more than the usual restraint on a prisoner's liberty to depart.

Id.² Adopting the Ninth Circuit's "more than the usual restraint on a prisoner's liberty to depart" standard, the Fourth Circuit concluded that, since defendant-prisoner was taken to a conference area primarily to await medical treatment and not to undergo interrogation, the incriminating statements he made were not in "custody" for purposes of Miranda. Id. at 973-74.

FACTUAL FINDINGS

In this case, while the Defendant was under house arrest on electronic monitoring and therefore not free to leave his property, he was in the legal custody of the North Carolina Department of Correction and not the Charlotte-Mecklenburg Police Department (CMPD) or Bureau of Immigrations and Customs Enforcement (ICE), the agencies conducting the consent search and questioning. While one or more of these officers knew that he was a convicted felon and likely on house arrest with electronic monitoring, there is no evidence that any officer attempted to coerce or intimidate him by leveraging the circumstances of his "house arrest."

To the contrary, the defendant's uncoerced openness and voluntariness is noteworthy. The Court previously found and re-finds for purposes of this holding that, until the defendant's formal arrest in the kitchen of his residence at 306 St. Anne Place, Charlotte, North Carolina, every aspect of the Defendant's interaction with the police was voluntary, save for the brief period that he was subject to a Terry v. Ohio³ pat-down next to his Chevrolet pick-up in his driveway outside his residence. Defendant's consent and cooperation was clear, knowing and voluntary, even to the extent of directing officers to the key to his house, which was stored in his pick-up truck, after consenting to the officers' entry into his residence to search for other persons.

---

²Citing Cervantes v. Walker, 589 F.2d 424, 428 (9th Cir. 1978).

³392 U.S. 1 (1968).

The defendant voluntarily and knowingly consented to a search of his truck and home even though he was under no legal compulsion to consent to searches by anyone other than his probation officer. The defendant could have revoked his consent and terminated the search at any time, but instead directed the police to the very place – a shoebox – where the ammunition was found in plain view with the defendant's birth certificate.[4] And while the defendant was not legally free to leave his property, he could have asked the police officers to leave and obtain a warrant before returning, at least up until the officers had independent probable cause to act.

Additionally, no officer recalled physically touching the defendant between his Terry pat-down and his formal arrest in the kitchen, and there is no evidence to the contrary that the defendant was touched during this time frame. While no officer left him alone during this time and anywhere from three to five officers were always near or around the defendant, up until the moment of his arrest the defendant was never under any additional restraint than that of any other convict on house arrest with electronic monitoring. He was neither handcuffed nor placed under additional restraint until formal arrest.

---

[4]While one officer testified the ammunition was in plain view in the shoe box, another said the ammunition was not readily visible but partly covered by the defendant's birth certificate and other items. Whether the ammunition was in plain view or covered, it is factually immaterial because the birth certificate had to be removed and presented to the ICE Special Agent to verify the defendant's citizenship. Upon the removal of the birth certificate, the ammunition would have been in plain view anyway.

ANALYSIS

1.  *Per Se* "Custody" for Purposes of Miranda.

Because the Fourth Circuit in Conley explicitly rejected a *per se* rule that prison incarceration constitutes "custody" for purpose of Miranda, it follows that the lesser restraint of house arrest with electronic monitoring is not *per se* custody for Miranda either. The lone fact that the defendant was under house arrest with electronic monitoring simply does not automatically trigger a Miranda warning requirement prior to any questioning.

2.  *De Facto* "Custody" for Purposes of Miranda

Under the facts of this case, the defendant was not in *de facto* custody of the CMPD or ICE merely because he may have believed that one or more of the officers or agents actually knew that he was a convicted felon on house arrest with electronic monitoring. Applying the Fourth Circuit standard of "more than the usual restraint on a prisoner's liberty to depart," the officers never raised or increased his restraint level, thus never creating the coercive interrogation environment which Miranda is intended to prevent and a reasonable defendant would have feared.

Furthermore, this was nothing more than "[g]eneral on-the-scene questioning as to facts surrounding a crime." 384 U.S. at 477. During the consent search, the police discovered a firearm and began questioning the defendant about its ownership both for officer safety and to determine if a crime was in progress. This clearly would have been permissible had the defendant not been under house arrest at the time. The Court declines to accord greater civil liberty interests to a convicted felon than a free citizen – to hold otherwise "would not only be inconsistent with Miranda but would torture it to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart." Cervantes, 589 F.2d at 427.

For these reasons, as well as those stated on the record in open court, Defendant's motion to suppress (Doc. No. 21) is DENIED.

IT IS SO ORDERED.

Signed: February 9, 2007

Frank D. Whitney
United States District Judge